IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HWB Victoria Strategies Portfolio, et al.,

    Plaintiffs,

vs.

The Republic of Argentina,           Case No. 17-1085-JTM

    Defendant,

and

GE Engine Services, L.L.C., *et al.*,,

    Garnishees..

MEMORANDUM AND ORDER

The plaintiff judgment creditors obtained a Cowley County, Kansas court order for attachment and writ of execution for two aircraft engines belonging to the debtor Republic of Argentina and located at the General Electric GE Engine Services plant at Strother Field in Arkansas City, Kansas. The Republic removed the collection action to this court, and has moved to vacate the attachment and quash the writ. Garnishees General Electric Company and GE Engine Services join in the motion. For the reasons provided herein, the court grants the motions of defendants and garnishees.

Prior to commencing the enforcement action in Kansas state court, on March 31, 2017, the plaintiffs[1] brought a similar action seeking to attach these engines in Ohio. The district court in that case rejected the plaintiff's request for relief, not only because the engines were determined to be in Kansas rather than Ohio, but also finding that the engines, which belong to the Air Force of the Republic of Argentina, are immune from attachment under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § *1062 et seq. See HWB Victoria Strategies Portfolio v. Republic of Argentina*, No 4:17-MC-00016 (PAG) (N.D. Ohio April 4, 2017).

The plaintiffs argue in their reply that this decision is not binding on this court, because it was rendered on the basis of the Republic's motion and without any opportunity for plaintiffs to respond on the issue of immunity. However, while the decision may not have preclusive effect in the present action, the court finds the decision persuasive. The engines in question are immune from attachment or execution pursuant to two separate provisions in FSIA.

The evidence before the court establishes that the engines in question are component parts of two Saab 340 airplanes owned and operated by the Fuerza Aérea Argentina, the Air Force of the Republic of Argentina. These two aircraft, with tail numbers beginning in "T" (T-33 and T-31) are employed to carry out the IX Air Brigade's mission in Patagonia,

---

[1] The plaintiffs are a relatively small subset of the creditors of the Republic, which defaulted on its debts in 2001. The Republic is engaged in settlement efforts with most creditors in extensive and ongoing litigation in the Southern District of New York. *See Aurelius Capital Master v. Republic of Argentina*, 644 Fed. Appx. 98 (2d Cir. 2016).

2

providing "the operational support ... necessary to ensure the operations of the air bases ... in order to allow the [military's] higher command to fulfill its mission." (Santilli Decl. ¶ 9). The aircraft are registered as military aircraft in the Dirección General de Aeronavegabilidad Militar Conjunta (General Directorate of Joint Military Airworthiness), and are part of the same T-series such as the aircraft known as "T-01" (also known as the Tango Zero One), which is used to transport the President of the Republic.[2] The two aircraft are operated exclusively by military personnel from the Argentine Air Force to "transport Air Force personnel, troops, and civilian passengers to remote areas of Argentina; to carry out emergency medical evacuations; to provide logistical support to Argentina's mission in Antarctica; and to provide emergency humanitarian relief to communities struck by disasters such as floods, earthquakes, or fires." (Santilli Decl. ¶¶ 7, 8). Air Force personnel arranged for the engine maintenance in the United States, and, when the maintenance is completed, the engines will be returned to the Air Force and reinstalled in its military aircraft.

Accordingly, the engines are immune from attachment, execution, or similar proceedings pursuant to two separate FSIA provisions. 28 U.S.C. § 1611(b)(2) provides that property of a foreign sovereign is immune if it

> is, or is intended to be, used in connection with a military activity and (A) is of a military character, or (B) is under the control of a military authority or defense agency.

---

[2] In *Colella v. Republic of Argentina*, No. C 07-80084 (WHA), 2007 WL 1545204, at *7 (N.D. Cal. May 29, 2007), the court determined that Tango Zero One was immune from execution under FSIA.

The engines in question meet both of the alternative grounds for immunity under Section 1611(b). The aircraft are of a military nature, used in connection with a military activity, and are used under the control of the Argentine Air Force. *See Colella*, 2007 WL 154204, at *7-8 (finding Argentine Airforce T-01 immune under § 1611(b)(2) because it was "maintained and operated by members of the Argentine Air Force" and recognizing that "transportation of military officials qualifies property as being 'of military character'"). Congress intended this provision of FSIA to be applied broadly such that "property is of a military character if it consists of equipment in the broad sense – such as weapons, ammunition, *military transport*, warships, tanks [and] communications equipment." H.R. Rep. No. 94-1487, at 31, as reprinted in 1976 U.S.C.C.A.N. at 6630 (emphasis added).

The engines are also immune under a separate provision of FSIA, which provides:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

28 U.S.C. § 1609 (emphasis added). Thus, FSIA provides that property of a foreign sovereign is not subject to execution unless one of the exemptions in Sections 1610 or 1611 is applicable.[3] Of these, the only potentially relevant exemption is Section 1610(a), which provides that property of a foreign sovereign may be attached if it is "used for a commercial activity in the United States."

---

[3] FSIA provides a separate mechanism for determining whether a foreign sovereign itself is immune from suit. *See* 28 U.S.C. § 1605. But immunity from suit is a separate question from immunity from execution or similar post-judgment proceedings, of the sort which the plaintiffs instituted in the Kansas state action, and which is governed by § 1609.

4

"The concept of 'commercial activity' should be defined narrowly because sovereign immunity remains the rule rather than the exception, and because courts should be cautious when addressing areas that affect the affairs of foreign governments." *Liberian E. Timber Corp. v. Republic of Liberia*, 659 F. Supp. 606, 610 (D.D.C. 1987) (citations omitted). *See Connecticut Bank v. Rep. of Congo*, 309 F.3d 240, 254 (5th Cir. 2002) ("[t]he phrase 'used for' in § 1610(a) is not a mere syntactical infelicity that permits courts to look beyond the 'use' of property, and instead try to find any kind of nexus or connection to a commercial activity in the United States"). Thus, for § 1610 to apply, the property must be "put into action, put into service, availed or employed *for* a commercial activity, not *in connection* with a commercial activity or *in relation* to a commercial activity." *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1091 (9th Cir. 2007) (emphasis in original).

Here, the engines are not being used by the Republic for any commercial purpose. They are simply being repaired or maintained, and will later be reinstalled on aircraft operated by the Argentine Air Force. The plaintiffs' suggestion that somehow immunity is lost because GE is repairing the engines for a fee ignores the construction of the statute set forth in cases such as *Connecticut Bank v. Congo*. The engines fall within § 1610(a) only if *the Republic* is using them for commercial purposes in the United States. *See Rubin v. Islamic Republic of Iran*, 830 F.3d 470, 479 (7th Cir. 2016); *Export-Import Bank of the Republic of China v. Grenada*, 768 F.3d 75, 90( (2d Cir. 2014). The facts before the court establish this is not the case.

Addressing a similar argument with respect to Tango Zero One, the aircraft

5

operated by the Argentine Air Force for the President of the Republic, the court in *Colella* observed:

> That the presidential airplane requires periodic service and maintenance does not mean that it is being "used for" commercial activity. The airplane is still only "used for" transporting the president. Service and maintenance do not convert the airplane into an implement used in commerce any more than filling its tanks with jet fuel would be considered a commercial use. This order agrees with Argentina that the plane needs to be maintained and serviced, but it is not "used for" maintenance and service, even when the president is not aboard. [T]o the extent that servicing Tango Zero One has any connection to commerce, it is only a passing connection. Such servicing does not convert that employment into "use" for commercial activity.

*See Colella*, 2007 WL 154204, at *6.

The plaintiffs request that further discovery be permitted before resolving the issue of the attachment. The plaintiffs correctly note that FSIA itself does not immunize foreign sovereigns from discovery as to the extent of the assets. *See Republic of Argentina v. NML Capital*, 134 S.Ct. 2250 (2014). Nevertheless, "[b]ecause 'sovereign immunity protects a sovereign from the expense, intrusiveness, and hassle of litigation, a court must be circumspect in allowing discovery before the plaintiff has established that the court has jurisdiction over a foreign sovereign defendant under the FSIA.'" *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016) (internal quotation and citation omitted). *See also In re Ohntrup*, 628 Fed. Appx. 809, 810 (3d Cir. 2015) (where third-party non-sovereign made a showing by preponderance of the evidence the property was immune under § 1610, district court acted within its discretion in limiting further

6

discovery); *Hansen v. PT Bank Negara Indonesia*, 601 F.3d 1059, 1063 (10th Cir. 2010) (FSIA immunity "protects foreign sovereigns from all the burdens of litigation, including the general burden of responding to discovery requests"); *MMA Consultants 1 v. Republic of Peru*, 2017 WL 1235005, *20 (S.D.N.Y. March 24, 2017) (denying request of discovery and hearing in FSIA action).

Here, given the undisputed status of the Republic as a foreign sovereign, the burden is on the plaintiffs to make an "initial showing that an FSIA exception to foreign immunity applies." *Orient Mineral Co. v. Bank of China*, 506 F.3d 980, 991 (10th Cir. 2007). *See also Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38, 42 (D.D.C. 2000) (plaintiffs' burden to "produc[e] evidence to show that there is no [sovereign] immunity"). The plaintiffs in the present action have made no such showing, and the request for discovery is purely generic. (Dkt. 46, at 25-26). Given the strong evidence of immunity, the fact that defendant and garnishees have already supplied a large amount of documentation to the plaintiffs, that the plaintiffs have failed to articulate *any* reasonable basis for suspecting the facts are other than those set forth above, and mindful of the circumspection to be employed in FSIA cases, the court in its discretion denies the request for discovery.

Because the court finds that the engines are immune under FSIA, the plaintiffs have failed to demonstrate a likelihood of success on the merits of the action. The plaintiffs are therefore not entitled to a restraining order, and the court need not address the additional arguments presented by the Republic as to why the court should deny the plaintiffs' request for injunctive relief. Further, the plaintiffs' response renders the matter moot by

withdrawing the request for injunctive relief. (Dkt. 46, at 11).

In light of the court's order finding the engines are immune under FSIA, the court also denies as moot the defendant's request for a bond under K.S.A. 60-703, and the garnishee's request to modify the scope of the attachment.

Finally, the court notes the request of the Republic to transfer the action to the Southern District of New York. Both the Republic (Dkt. 24, at 23) and the plaintiffs (Dkt. 46, at 26-27) treat the matter in cursory fashion, and the Republic's Reply only urges such a transfer "[i]n the alternative." (Dkt. 50, at 19). Given the other conclusions of the court, the request for transfer is denied without prejudice.

IT IS ACCORDINGLY ORDERED this 4th day of May, 2017, that the defendant and garnishee's motions (Dkt. 23, 34) are hereby granted, such that the Order of Garnishment is VACATED, and the Writ of Execution is QUASHED.

s/ J. Thomas Marten<br>
United States District Judge